Case 3:23-cv-00006   Document 19   Filed on 01/25/24 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
January 25, 2024
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## Galveston Division

### No. 3:23-cv-6

AIX Specialty Insurance Company, *Plaintiff*,

v.

Preferred Pools of Houston, Inc., *et al.*, *Defendants*.

## MEMORANDUM OPINION AND ORDER

Jeffrey Vincent Brown, *United States District Judge*:

In this declaratory-judgment action, AIX Specialty Insurance Company argues that it has no duty to defend or indemnify its insured, Preferred Pools of Houston, Inc., in two related underlying state-court lawsuits. Dkt. 13. AIX has moved for summary judgment. *Id.* The court will grant the motion.

## I. Background

### A. The Projects

William and Paula Taylor and Thani and Avani Gossai are neighbors in League City. Dkt. 3 ¶¶ 5–8, 12. Both couples' properties have backyards that

slope down to a waterway and are separated from it by a bulkhead wall. Dkts. 13-3 at 1; 13-4 at 2.

In late 2019, the Gossais hired Preferred Pools of Houston, Inc., to build a pool, outdoor kitchen, and spa in their backyard. Dkt. 13-3 at 2. Using a design prepared by Carnes Engineering, Preferred Pools completed the project in or around July 2020. *Id.* at 6. Starting later that year, however, the Gossais began to notice issues with the new structures: pavers separated, a wall cracked, and the pool and spa drained. *Id.* at 7–8. In or about June 2021, Preferred Pools took elevation measurements and discovered that the pool had moved significantly. *Id.* at 8. In the ensuing months, the situation deteriorated; the bulkhead had shifted and had begun to fail. *Id.* at 8, 10. Pictured below is the bulkhead in its failing state:



*Id.* at 10. In or about September 2021, Preferred Pools removed all the structures it had installed, but the bulkhead continued to fail. *Id.* In or about March 2022, the Gossais had the bulkhead entirely replaced. *Id.* at 11.

The Taylors also hired Preferred Pools to build a pool in their backyard. Dkt. 13-4 at 4. Again using a design prepared by Carnes Engineering, Preferred Pools substantially completed the project in or around May 2020. In or about June 2021, the Taylors began to notice serious issues. *Id.* at 5–6. "By the end of October 2021, the swimming pool . . . had succumbed to catastrophic failures" and was "in need of immediate remediation and repair." *Id.* at 6. An engineer hired by the Taylors found that: "the original retaining wall and drainage system for the retaining wall was compromised during the construction of the pool and surrounding hardscape"; the bulkhead had failed and was leaning toward the canal; "a large amount of separation between the soil and the bulkhead" was "allow[ing] for ongoing erosion, additional soil movement, and further impact to the bulkhead, hardscaping, and pool"; and the "inadequate structural support associated with the [Gossais'] pool exacerbated the magnitude of the failure and movement of the [Taylors'] bulkhead, soil, boathouse, and hardscaping." *Id.* at 6–7, 16. Like the Gossais, the Taylors had to repair their bulkhead. *Id.* at 7.

## B. The Lawsuits

In September 2022, the Gossais sued Preferred Pools and Carnes Engineering in state court. Dkt 13-3. They have sued Preferred Pools for negligence, Texas Deceptive Trade Practices Act violations, breach of contract, breach of the implied warranty of good and workmanlike construction, and breach of express warranty. *Id.* at 11–14. As required by Tex. Civ. Prac. & Rem. Code § 150.002, the Gossais attached to their petition a certificate of merit completed by a licensed professional engineer. *Id.* at 14–15, 18–24. The next month, the Taylors also sued Preferred Pools and Carnes Engineering in state court, bringing the same claims and attaching a different engineer's certificate of merit. Dkts. 15 at 2; 13-4.

## C. The Insurance Policy and this Action

Preferred Pools was insured under AIX policies from May 2019 to May 2020 and from May 2020 to May 2021. Dkt. 3 ¶ 21. The policies contained the same coverage forms and endorsements and the same "earth movement" exclusion. *Id.* ¶¶ 22–23. The text of that exclusion states in relevant part that the policies do not apply to:

> "Bodily injury" or "property damage" arising out of, resulting from, caused by, contributed to by, or in any way related, in whole or in part, to the subsidence, movement, or vibration of land or soil, including, but not limited to, earthquake, landslide, cave-in, collapse, loss of lateral support, failure, erosion, mud

>flow, sink hole, change in level of the soil, or any sinking, rising, settling, cracking, shifting, vibration, expansion or contraction of the earth or soil, or any other movement of earth by whatever cause. There is no coverage for any "claim", "suit", or "occurrence", arising or involving in whole or in part any actual or alleged subsidence, movement, or vibration of land or soil regardless of any other cause or event (natural or man caused) contributing or concurring, in any sequence, to the loss, liability, or damages. This exclusion applies whether or not the subsidence, movement or vibration occurs in conjunction with any other cause.
>
>This exclusion applies:
>(1) To any earth movement, subsidence, or vibration, including but not limited to, any defects in materials, construction methods, negligence in performance, design, construction, selection of materials or any other activity which is alleged to have caused the earth movement solely, jointly, concurrently or in any other sequence . . . .
>
>Notwithstanding the broad scope of this exclusion, where a suit is based in whole or in part upon bodily injury or property damage that is excluded by this exclusion, we shall have the right, but not the obligation, to defend any insured in connection with the claim or suit.

*Id*. ¶ 23; *see also* Dkts. 13-1 at 12; 13-2 at 12.

AIX "has agreed to defend Preferred Pools in the [Gossais' and Taylors' lawsuits] under a full and complete reservation of rights." Dkt. 3 ¶ 25. But it also argues that the earth-movement exclusion applies and therefore seeks a declaration that it does not owe a duty to defend or indemnify Preferred Pools in the underlying lawsuits. *Id*. ¶¶ 24, 27. AIX has moved for summary judgment. Dkt. 13.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). The movant bears the burden of presenting the basis for the motion and the elements of the causes of action on which the nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when the nonmoving party has failed "to address or respond to a fact raised by the moving party

and supported by evidence," the fact is undisputed. *Broad. Music, Inc. v. Bentley*, No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017). "Such undisputed facts may form the basis for summary judgment." *Id.*

### B. Duty to Defend

Under Texas law, to determine whether an insurer has a duty to defend, a court must apply the "eight-corners rule." *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199 (Tex. 2022). "Under the eight-corners rule, the insurer's duty to defend is determined by comparing the allegations in the plaintiff's petition to the policy provisions, without regard to the truth or falsity of those allegations and without reference to facts otherwise known or ultimately proven." *Id.*[*]

"The insureds have the initial burden to establish that a claim is potentially within the scope of coverage." *State Farm Lloyds v. Richards*, 966 F.3d 389, 393 (5th Cir. 2020). If the insureds carry that burden, the burden shifts to the insurer "to show that the plain language of a policy exclusion or limitation allows it to avoid coverage of all claims, also within

---

[*] "The rule's name derives from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the [insurance] policy and the plaintiff's pleading." *Id.*

the confines of the eight corners rule." *Id.* (cleaned up). "When determining whether each side has satisfied its burden, the Texas Supreme Court has instructed [courts]—when applying Texas law—to 'resolve all doubts regarding the duty to defend in favor of the duty . . . and [ ] construe the pleadings liberally.'" *Id.* (citation omitted, and alterations in original).

### C. Duty to Indemnify

"[T]he duty to defend and the duty to indemnify are distinct and separate duties," *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) (internal quotation marks and citation omitted); "one duty may exist without the other," *id.* "While analysis of the duty to defend has been strictly circumscribed by the eight-corners doctrine, it is well settled that the facts actually established in the underlying suit control the duty to indemnify." *Id.* at 744 (internal quotation marks and citation omitted). But the Supreme Court of Texas has held that "the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" *Farmers Texas Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis in original).

### III. Analysis

**A. Duty to Defend**

AIX argues that it has no duty to defend Preferred Pools in the underlying lawsuits because the pleadings "establish that the Gossais' and the Taylors' claims against Preferred Pools are excluded from coverage under the Earth Movement Exclusion." Dkt. 13 at 10. AIX asserts that "[p]aragraph 23 of the Taylors' Certificate of Merit makes clear that the problems experienced on the two properties arise out of, are related to, and are contributed to by earth movement in various forms." *Id.* at 14–15. In AIX's view, "[i]t is hard to imagine a property[-]damage[-]liability case to which the exclusion would more clearly apply." *Id.* at 16.

The Taylors respond by stating, while they "do not dispute that paragraph 23 of the Certificate of Merit refer[s to] damages that were related to earth movement," AIX "ignores other critical portions of the certificate that show damages the Taylors have alleged fall outside the scope of the [earth-movement] policy exclusion." Dkt. 15 at 6. The Taylors then quote three of the certificate's other paragraphs, the content of which is well-summarized by this portion of the first:

> [T]he damage to the Taylors' pool and associated structures, bulkhead, and boathouse and the backyard slope instability were the result of [(1)] substandard quality and construction of the

pool and associated structures at the Gossai property and [(2)] the removal of the Pre-Existing Retaining Wall at the Gossai property, which resulted in slope instability, failure of the bulkhead, and damage to the Property and Neighboring Properties.

*Id*. at 6–7. In the engineer's professional opinion, "deficient design/construction of the pool and associated structures" at the Gossai property resulted in "water accumulation in the soils around [them]," which in turn "exacerbated the design and construction deficiencies and contributed to the slope failure, soil movement, and bulkhead failure at the Taylors' and Gossai[s'] [p]roperties." *Id*. at 7. His certificate also states that: (1) Preferred Pools removed from both properties retaining walls that had "stabilized and retained the backyard soils to prevent movement of the soil mass and contain soils to properly support the house foundations," and (2) Carnes Engineering performed its design work without acquiring "adequate knowledge of the site characteristics"—namely, "the slope of the yard at the Gossai[s'] [p]roperty" and "the existing soils on site"—or of "the potential impact on the existing structures." *Id*. at 6–7.

In summarizing the paragraphs they quote, the Taylors emphasize the engineer's opinion as to the human (design- and construction-related) causes of the property damage. *Id*. at 7. Emphasizing as well the alleged sequence of events, and tellingly omitting the word "soil," the Taylors

characterize what the engineer called "the slope failure, soil movement, and bulkhead failure" as "the bulkhead's failure, movement, and ***subsequent*** slope failure." *Id.* at 6–7 (emphasis in original); *see also id.* at 4. They conclude by arguing that "[a]t the very least, there is at least some sort of ambiguity or doubt regarding [AIX]'s duty to defend Preferred Pools in the underlying lawsuits." *Id.* at 8.

The Gossais' and Preferred Pools' responses add little to the Taylors'. The Gossais join the Taylors' response, noting that their petitions and attached certificates of merit are "substantially similar." Dkt. 16 at 2. They contribute only citations to two inapposite cases that involve earth-movement exclusions: one in which the exclusion applied only to land subsidence resulting from the insured's operations but there was no allegation that that its operations resulted in subsidence, *Wilshire Ins. Co. v. RJT Const., LLC*, 581 F.3d 222, 226 (5th Cir. 2009), and another in which there was no allegation that the property damage was related to earth movement, *Mid-Continent Cas. Co. v. Krolczyk*, 408 S.W.3d 896, 905 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Dkt. 16 at 2–3.

Much of Preferred Pools' response is copied and pasted from the Taylors' response. *Compare* Dkt. 17 at 2–5, 8–10, *with* Dkt. 15 at 3–8. While the response's section about the Gossai petition's certificate of merit contains

some original work, it adds little to the analysis. *See* Dkt. 17 at 5–9. This is unsurprising given the Gossais' acknowledgement that their petition's certificate is substantially similar to the Taylor petition's. Preferred Pools concludes by observing that the underlying lawsuits concern neither "mere natural earth movement" nor "a broad geological event," but rather allege that human negligence "prompted . . . earth movement." *Id.* at 11. Noting that "pool installations, by their very nature, interact with the ground," Preferred Pools also argues that "[i]f AIX's insurance policy inherently excludes claims arising from the fundamental process of pool installations, then AIX never truly intended to cover [Preferred Pools] for any claims related to pool installation." *Id.*

The court finds that the earth-movement exclusion applies to the underlying lawsuits. The defendants resist this conclusion by pointing to the non-natural causes of their damage, but the insurance policy's broadly written exclusion dooms that effort. The Gossais' and Taylors' lawsuits clearly allege property damage "arising out of, resulting from, caused by, contributed to by, or in any way related, in whole *or in part*, to the subsidence, movement, or vibration of land or soil, including . . . any . . . movement of earth *by whatever cause*." Dkt. 3 ¶ 23 (emphasis added). And it cannot reasonably be denied that their lawsuits "involv[e] in whole *or in*

*part* any actual or alleged subsidence, movement, or vibration of land or soil *regardless of any other cause or event* (natural *or* man[-]caused) contributing or concurring, *in any sequence*, to the loss, liability, or damages." *Id.* (emphases added). As described above, the Taylors unwittingly prove this point in their response, highlighting paragraphs of their petition's certificate of merit that capture the causal centrality of soil movement to their damages. *See, e.g.*, Dkt. 15 at 6–7. Furthermore, the exclusion expressly applies to cases in which design and construction deficiencies are "alleged to have caused . . . earth movement solely, jointly, concurrently or in any other sequence." *Id*. AIX is therefore quite correct that the distinction Preferred Pools makes between "mere natural earth movement" and human-caused earth movement is irrelevant for purposes of this action. *See* Dkt. 18 at 5.

As to the novel arguments that Preferred Pools makes in the conclusion of its response, the court notes first that Preferred Pools provides no support for its assertion that "the common understanding of 'earth movement' usually alludes to significant geological shifts or natural occurrences, such as earthquakes or landslides." *See* Dkt. 17 at 11. The assertion also ignores the fact that the exclusion expressly applies in cases of "earthquake, landslide, cave-in, collapse, loss of lateral support, failure, erosion, mud flow, sink hole,

change in level of the soil, or any sinking, rising, settling, cracking, shifting, vibration, expansion or contraction of the earth or soil, or any other movement of earth by whatever cause." Dkt. 3 ¶ 23. Preferred Pools also misses the mark in arguing that the court should not read the exclusion to apply to the Gossais' and Taylors' lawsuits because pool installation necessarily involves earth movement. As AIX explains, "[w]hile the ***installation*** of a pool always involves earth movement, claims for ***property damage*** against pool contractors often do not." Dkt. 18 at 8 (emphases in original). Unfortunately for the defendants, there is no genuine dispute as to whether the Gossais' and Taylors' lawsuits seek recovery for property damage that arose out of earth movement; they do. AIX is therefore entitled to summary judgment declaring that it has no duty to defend Preferred Pools in the underlying lawsuits.

### B. Duty to Indemnify

Just as the earth-movement exclusion prevents AIX from having a duty to defend Preferred Pools in the underlying lawsuits, so too does it prevent AIX from having a duty to indemnify Preferred Pools in them. AIX is therefore also entitled to summary judgment declaring that it has no duty to indemnify Preferred Pools in the underlying lawsuits.

\*   \*   \*

For the foregoing reasons, the court grants AIX's motion for summary judgment. Dkt. 13. The court will enter a final judgment separately.

Signed on Galveston Island this 25th day of January, 2024.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE